UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| McCLURE AND SONS, INC. ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| ) | Civil Action No. _____ |
| v. ) | |
| ) | |
| KRAIG ANDERSON; ) | |
| ) | |
| and ) | |
| ) | |
| TARA R. BARKER a/k/a Tara R. ) | |
| Anderson; ) | |
| ) | |
| KCM, LLC d/b/a National Forming and ) | |
| Shoring Co.; ) | |
| ) | |
| and ) | |
| ) | |
| LIG FORMING AND SHORING, LLC ) | |
| ) | |
| Defendants. ) | |
| ) | |

## COMPLAINT

McClure and Sons, Inc. ("MSI"), by counsel, for its Complaint against Kraig Anderson ("Anderson"), Tara R. Barker a/k/a Tara R. Anderson ("Barker"), KCM, LLC d/b/a National Forming and Shoring Co. ("KCM"), and LIG Forming and Shoring, LLC ("LIG"), (collectively the "Defendants"), states as follows:

1

*Parties*

1. MSI is a corporation organized and existing under the laws of the State of Washington with a principal place of business in Mill Creek, Washington.

2. KCM is a limited liability company organized and existing under the laws of the State of Wyoming with a principal place of business in Coeur d'Alene, Idaho. KCM does business under the name of National Forming and Shoring Company.

3. LIG is a limited liability company organized and existing under the laws of the State of Wyoming with a principal place of business in Coeur d'Alene, Idaho.

4. Anderson, an individual, is a resident and domiciliary of the State of Idaho. Upon information and belief, Anderson is a member and/or employee of both KCM and LIG, and is the husband of Barker.

5. Barker, an individual, is a resident and domiciliary of the State of Idaho. Upon information and belief, Barker is a member and/or employee of both KCM and LIG, and is the wife of Anderson.

*Jurisdiction and Venue*

6. This Court has federal subject matter jurisdiction under the Racketeer Influenced Corrupt Organization Act ("RICO"), 18 U.S.C. §1964(c) federal question jurisdiction pursuant to 28 U.S.C. §1331, and supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

7. Venue is proper in this jurisdiction under 28 U.S.C. §1391(b).

*Defendants' Wire Fraud*

8. KCM and LIG purport to be construction supply brokers. In reality, KCM and LIG were established to create the appearance that they are legitimate construction supply

brokers as part of a scheme to defraud persons by inducing them to send money to purchase equipment and/or materials which Defendants had no intent to provide.

9. Anderson is the organizer and, on information and belief, a member and/or employee of KCM and LIG. Barker, on information and belief, is Anderson's wife and a member and/or employee of LIG and KCM. She is the statutorily-required point of contact on the official 2017 annual reports for KCM and LIG filed with the Wyoming Secretary of State.

10. Anderson organized both KCM and LIG on August 1, 2014 in Wyoming. KCM's articles of organization state its principal place of business as 212 Ironwood Drive, #D182, Coeur d'Alene, Idaho 83814. LIG's articles of organization state its principal place of business as 212 Ironwood Drive, #D181, Coeur d'Alene, Idaho 83814. On information and belief, these two address are post office boxes rented from a business known as Postal Annex in Coeur d'Alene, Idaho. On information and belief, KCM and LIG were organized for the purpose of defrauding persons by inducing them to send money to purchase equipment and/or materials which Defendants had no intent to provide.

11. On September 24, 2014, shortly after the formation of KCM and LIG, Anderson and Barker transferred their jointly-owned principal residence, located at 7177 Heine Drive, Coeur d'Alene, Idaho, to Soulitude Trust, LLC, an Idaho limited liability company, to avoid their creditors.

12. Soulitude Trust, LLC was organized by Anderson and Barker in January of 2008 and administratively dissolved on May 2, 2017. Its 2016 statutorily-required annual statement filed with the Idaho Secretary of State identifies Anderson and Barker as its members and states its principal place of business is 212 Ironwood Drive, #D187, Coeur d'Alene, Idaho 83814. On information and belief, this is a post office box rented from a business known as Postal Annex in

3

Coeur d'Alene, Idaho. On information and belief, Anderson and Barker transferred their residence to Soulitude Trust, LLC for the purpose of evading and defrauding their creditors and those of KCM and LIG.

13. In late March or early April of 2017, Les McClure, President of MSI, inquired about the availability and pricing of used Peri brand formwork from Defendants.

14. On April 4, 2017, Anderson emailed LIG's pricing and terms of purchase of used Peri brand "Trio" formwork to MSI including delivery within 4+ weeks of receipt by Defendants of MSI's down payment. On April 7, 2017, MSI responded with its order to purchase the Peri materials.

15. On April 7, 2017, Valerie Martinez sent MSI invoice #581 in the amount of $192,534.80, with instructions to wire $173,281.32 to LIG. A copy of this invoice is attached as Exhibit 1.

16. On April 7, 2017, MSI initiated a wire transfer to Defendants in the amount of $173,281.32. On April 10, 2018, Defendants acknowledged receipt of these funds.

17. Between April 7, 2018 and May 22, 2018, the parties exchanged emails regarding shipping dates. On May 22, 2017, Anderson informed MSI in an email one of its delivery trucks was involved in an accident and that its load of Peri forms were destroyed. He suggested that MSI rent the corresponding Peri forms and that the rental costs would be deducted from the amount MSI owed to Defendants.

18. The first shipment of Peri forms were delivered to MSI in May of 2017. This shipment represented $75,990.12 worth of the materials ordered by MSI.

19. On May 24, 2017 Anderson advised that he had retained a Maryland attorney (where the accident occurred) who specialized in commercial cargo claims and was working with the insurance company (Travelers).

20. On June 12, 2018, Anderson provided a list of replacement materials to MSI that it could supply, including $51,236.20 worth of extra materials to compensate MSI for the cost of renting Peri forms. At the time Anderson made this representation, he knew it to be false.

21. On September 12, 2017, Anderson informed MSI in an email that it had filed a lawsuit against Travelers because of its stalling tactics.

22. On November 6, 2017, Anderson advised MSI that it had settled its lawsuit with Travelers but had only received $70,000.00. He proposed replacing the damaged materials rather than refunding the remaining funds paid by MSI for the damaged forms and MSI's cost of rental forms. At the time Anderson made this representation, he knew it to be false.

23. Between November 6, 2017 and July 17, 2018, MSI and Anderson exchanged emails and telephone calls regarding the availability and shipment of replacement materials. During this period, despite repeated efforts by MSI to get answers, Anderson often avoided calls and failed to respond to emails for weeks at a time and made promises to respond that were not kept.

24. On December 21, 2017, Anderson stated in an email to MSI that the replacement materials could be provided the next month. At the time Anderson made this representation, he knew it to be false.

25. On July 24, 2018, MSI notified Defendants that it had contacted their attorney and demanded the refund of its costs if delivery could not be accomplished. Defendants immediately

responded that the replacement materials were being delivered to a port in Germany on August 3, 2018 for shipping. At the time Anderson made this representation, he knew it to be false.

26. As of the date of this suit, Defendants have failed, and continue to fail, to replace the forms or refund the amounts it owes to MSI.

27. Despite making a payment of $173,281.32 on April 7, 2017 and receiving repeated representations from Defendants that the forms would be delivered, MSI never received $97,341.20 worth of the forms it ordered.

28. On May 23, 2017, Anderson agreed to compensate MSI for the cost of renting Peri forms and materials pending delivery of the remaining goods. Between June 28, 2017 and April 28, 2018, MSI incurred costs totaling $106,272.62 for the rental of Peri forms needed for ongoing projects to replace the forms that were paid for but not delivered by Defendants.

29. Defendants knew that each of their representations to MSI regarding the availability and shipment of the replacement forms and reimbursement of rental costs were false. These misrepresentations were made for the purpose of defrauding MSI.

30. Each of the fraudulent emails and telephone calls sent and made by Defendant regarding the availability and shipment of the replacement forms for the forms MSI had ordered constitute wire fraud, as that term is defined in 18 U.S.C. §1343.

*Additional Racketeering Activity*

30. Upon information and belief, Defendants have defrauded others in the same manner they have defrauded MSI.

31. By way of example, Defendants engaged in a scheme to defraud Gracon Consstruction, Inc. ("Gracon"), a Texas corporation, as follows:

    a. On or about December 17, 2014, Gracon received an invoice from LIG in amount of $129,947.07 for 8,133 sq. ft. of used concrete forms.

    b. On or about December 22, 2014, Gracon wired LIG $116,952.36, an amount representing 90% of the agreed purchase price, to LIG.

    c. Between December 23, 2014 and January 6, 2015, Gracon and Anderson exchanged numerous emails and telephone calls regarding the status of delivery of the concrete forms.

    d. Between January 7, 2015 and February 18, 2015, Gracon received repeated promises from Anderson and LIG that the concrete forms would be shipped. Despite these promises no forms were received.

    e. On or about February 20, 2015, Gracon received approximately $24,000 worth of materials from LIG, which did not match the original order.

    f. On or about March 12, 2015, Gracon received a second shipment from LIG. Not only did this shipment not include all of the materials Gracon had ordered, but they were of an unacceptable poor quality.

    g. Despite not providing Gracon with the concrete forms it ordered, and despite repeated demand, Anderson and LIG did not return any of the $116,952.36 Gracon paid.

    h. Each of the fraudulent emails sent and telephone calls made by Anderson and LIG to Gracon constitute wire fraud as that term is defined in 18 U.S.C. §1343.

32. Defendants also engaged in a scheme to defraud Allen Concrete and Masonry, Inc. ("Allen Concrete"), a Florida corporation, as follows,

7

    a. In September and October 2014, Allen Concrete ordered 139 concrete forms from KCM for a total price of $142,500. The entire purchase price was wired to KCM upfront and before Allen Concrete received any of the forms it ordered.

    b. Anderson and KCN never sent Allen Concrete the entire order, failing to ship approximately $29,838.71 worth of forms to Allen Concrete.

    c. Upon information and belief, Anderson and KCM repeatedly assured Allen Concrete that the remaining $29,838.71 worth of forms would be delivered. Despite these promises, the remaining $29,838.71 worth of forms were never delivered.

    d. Despite not providing Allen Concrete with the concrete forms it ordered, and despite repeated demand, Anderson and LIG did not return any of the $29,838.71 Allen Concrete paid.

    e. Each of the fraudulent emails sent and telephone calls made by Anderson and LIG to Allen Concrete constitute wire fraud as that term is defined in 18 U.S.C. §1343.

33. Defendants have also defrauded Tucker-Kirby Company ("Tucker-Kirby"), a North Carolina company, as follows:

    a. In November 2015, Tucker-Kirby wired LIG $56,880.00 for the purchase of tilt-up concrete wall braces.

    b. In December 2015, LIG and Anderson informed Tucker-Kirby that the braces it had paid for were not going to be shipped.

    c. Tucker-Kirby made repeated demands to LIG and Anderson for the return of the $56,880.00 it transferred to Defendants.

    d. Despite repeated representations from LIG and Anderson that the money would be returned, Tucker-Kirby was never refunded any of the $56,880.00 it paid to LIG.

    e. Each of the fraudulent communications sent or made by Anderson and LIG to Tucker-Kirby constitute wire fraud as that term is defined in 18 U.S.C. §1343.

34. Defendants have also defrauded Coastal Precast Systems, LLC ("CPS"), a Virginia limited liability company, as follows:

    a. Upon information and belief, between January 22, 2016 and February 28, 2016, CPS and Anderson/LIG/KCM exchanged emails arranging for the purchase by CPS of Symons"Max-A-Form" concrete forms from KCM.

    b. On February 29, 2016, KCM sent CPS an invoice for $64,769.10 with instructions to wire $58,292.19 to KCM. When Defendants issued this invoice, they knew that the forms were not available and issued the invoice solely in an effort to defraud CPS.

    c. CPS initiated the wire transfer of $58,292.19 to KCM on February 29, 2016 and the funds were received by Defendants' bank on the same day.

  d. After receipt of the down payment, and in furtherance of their scheme to defraud CPS, Defendants continued to make materially false representations to CPS regarding the purported shipment of the forms.

  e. Throughout the summer of 2016, CPS made repeated demands for repayment of the $58,292.19 and Defendants made repeated representations that the forms would be delivered.

  f. CPS never received the forms it ordered or the refund of the $58,292.19 it had paid to Defendants.

  g. Each of the fraudulent communications sent or made by Anderson and LIG to CPS constitute wire fraud as that term is defined in 18 U.S.C. §1343.

35. Defendants have engaged in a pattern of racketeering activity whereby they have transmitted, by wire in interstate commerce, writings, signs, signals, pictures, or sounds for the purpose of executing a scheme to defraud various companies, including MSI.

*Count I – RICO §1962(c) Violation*

36. The allegations of paragraphs 1 through 35 are incorporated as if fully set forth herein.

37. Anderson, Barker, KCM and LIG combined to create an enterprise engaged in and whose activities affect interstate commerce. The sole purpose of this enterprise was to defraud persons by inducing them to send money to purchase equipment and/or materials which Defendants had no intent to provide.

38. Defendants conducted and participated in the conduct of the enterprise through a pattern of racketeering activity, as described herein, and for the unlawful purpose of intentionally defrauding MSI.

39. Pursuant to and in furtherance of this fraudulent scheme, Defendants committed multiple related acts of wire fraud, as that term is defined in 18 U.S.C. §1343.

40. Defendants' acts identified herein, combined with Defendants' fraudulent scheme perpetrated against at least Gracon, Allen Concrete, Tucker-Kirby, and CPS, constitute a pattern of racketeering activity pursuant to 18 U.S.C. §1961(5).

41. Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering activity and the activity described above in violation of 18 U.S.C. §1962(c).

42. As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. §1962(c), MSI has been injured in its business and property in the total sum of $203,613.82.by wiring KCM the sum of $97,341.20 for forms that were never delivered and by having to rent replacement forms in the sum of $106,272.62. Furthermore, Defendants' fraudulent emails caused MSI to refrain from exercising its legal rights to its detriment.

43. Pursuant to 18 U.S.C. §1964(c), MSI is entitled to treble damages in the amount of $610,841.46 and attorney's fees.

*Count II – RICO §1962(d) Violation*

44. The allegations of paragraphs 1 through 43 are incorporated as if fully set forth herein.

45. As set forth above, the Defendants agreed to conspire and violate 18 U.S.C. §1962(c). Specifically, the Defendants conspired to conduct the affairs of the enterprise through a pattern of racketeering activity.

46. The Defendants conspired to engage in a scheme where fraudulent emails and telephone calls were sent and made to induce MSI and others to pay for forms and other goods that were never shipped or received.

47. The Defendants have intentionally conspired and agreed to directly and indirectly conduct the affairs of the enterprise through a pattern of racketeering activity. Specifically, Defendants conspired to commit, and actually committed, wire fraud as part of a scheme to defraud MSI in the amount of $203,613.94. The Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S.C. §1962(c) in violation of Pursuant to 18 U.S.C. §1962(d).

48. As a direct and proximate result of Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. §1962(d), MSI has been injured in its business and property in the sum of $203,613.94.

49. Pursuant to 18 U.S.C. §1964(c), MSI is entitled to treble damages in the amount of $610,841.46 and attorney's fees.

*Count III – Fraud/Intentional Misrepresentation*

50. The allegations of paragraphs 1 through 49 are incorporated as if fully set forth herein.

51. Between April 4, 2017 and the time of this action, Defendants made repeated material misrepresentations to MSI regarding the availability of certain Peri forms that MSI had ordered and for which MSI had paid. Specifically, Defendants repeatedly and knowingly misrepresented the shipping date of the forms MSI had ordered.

52. At the time each of the misrepresentations described herein were made, Defendants intended to mislead MSI.

53. MSI relied on these misrepresentations when it wired $173,281.32 to LIG, when it rented needed replacement equipment, and when it refrained from enforcing its legal rights against Defendants.

54. As a result of Defendants' fraud, MSI has been damaged in the sum of $203,613.94.

55. As a result of Defendants' fraud, MSI is entitled to punitive damages in the sum of $610,841.46.

*Count IV – Negligent Misrepresentation*

56. The allegations of paragraphs 1 through 55 are incorporated as if fully set forth herein.

57. Between April 4, 2017 and the time of this action, Defendants made repeated material misrepresentations to MSI regarding the availability of certain Peri forms that MSI had ordered and for which MSI had paid. Specifically, Defendants repeatedly and knowingly misrepresented the shipping date of the forms MSI had ordered.

58. Each of the misrepresentations described herein were made negligently. At the time of each misrepresentation, Defendants knew or should have known that the representations were false and that MSI would rely on those misrepresentations.

59. MSI relied on these misrepresentations when it wired $173,281.32 to LIG, when it rented needed replacement equipment, and when it refrained from enforcing its legal rights against Defendants.

60. As a result of Defendants' fraud, MSI has been damaged in the sum of $203,613.82.

*Count V – Unjust Enrichment*

61. The allegations of paragraphs 1 through 60 are incorporated as if fully set forth herein.

62. By virtue of its paying LIG $173,281.32, MSI conferred a benefit upon LIG.

63. KCM knew that MSI had paid LIG and should have reasonably expected that it was to repay MSI by providing Peri forms.

64. Despite never providing MSI $97,291.20 worth of the Peri forms, LIG retained the entire $173,281.32 paid to it by MSI.

65. Accordingly, LIG has been unjustly enriched at the expense of MSI.

66. As a result of LIG's unjust enrichment, MSI has suffered damages in the sum of $97,341.20.

*Count VI – Breach of Contract*

67. The allegations of paragraphs 1 through 66 are incorporated as if fully set forth herein.

68. LIG and MSI had a contract, as evidenced by MSI's purchase order #581, whereby MSI agreed to purchase Peri forms from LIG for the amount of $192,534.80.

69. Under the terms of this contract, MSI was to pay 90% of the purchase price, or $173,281.32 up front and the remaining 10% upon delivery of the forms. MSI complied with the terms of the contract by wiring LIG a down payment in the amount of $173,281.32.

70. LIG has breached the terms of the contract by failing to deliver $97,341.20 worth of the Peri forms ordered by MSI.

71. As a result of LIG's failure to deliver the aforesaid forms, MSI, with the concurrence of Defendants, rented replacement Peri forms, incurring a total cost of $106,272.62.

72. As a result of LIG's breach of the contract, MSI has suffered damages in the sum of $203,613.82.

WHEREFORE, Plaintiff, McClure and Sons, Inc., by counsel, prays that this Court:

(i) Enter judgment in its favor against Kraig Anderson, Tara Barker, KCM, LLC and LIG Forming and Shoring, LLC jointly and severally, with respect to Count I in the sum of $610,841.46 plus attorney's fees;

(ii) Enter judgment in its favor against Kraig Anderson, Tara Barker, KCM, LLC and LIG Forming and Shoring, LLC jointly and severally, with respect to Count II in the sum of $610,841.46 plus attorney's fees;

(iii) Enter judgment in its favor against Kraig Anderson, KCM, LLC and LIG Forming and Shoring, LLC jointly and severally, with respect to Count III in the sum of $203,613.82 plus punitive damages in the amount of $500,000.00;

(iv) Enter judgment in its favor against Kraig Anderson, KCM, LLC and LIG Forming and Shoring, LLC jointly and severally, with respect to Count IV in the sum of $203,613.82 plus attorney's fees;

(v) Enter judgment in its favor against LIG, LLC with respect to Count V in the sum of $97,341.20;

(vi) Enter judgment in its favor against LIG, LLC with respect to Count VI in the sum of $203,613.82;

(vii) Award McClure and Sons, Inc. its costs and expenses, including attorney's fees, incurred in this matter; and

(viii) Grant McClure and Sons, Inc. all other just and necessary relief.

Dated: _June 19_, 2019.

By: _[signature]_
Douglas W. Elston (WSBA No. 10592)
LAW OFFICES OF DOUGLAS W. ELSTON
4321 146th Place SE
Snohomish, Washington 98296
Telephone: (425) 338-7036
Facsimile: (425) 582-9005
elstonlaw@comcast.net
Counsel for McClure and Sons, Inc.